UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-61157-CIV-BLOOM/VALLE

**SOUTH BROWARD HOSPITAL DISTRICT**,
*d/b/a* MEMORIAL HEALTHCARE SYSTEM,

     Plaintiff,

v.

**COVENTRY HEALTH AND LIFE INSURANCE CO.**, *et al.*,

     Defendants.
_____/

## ORDER DENYING MOTION TO REMAND

**THIS CAUSE** came before the Court on Plaintiff's Motion to Remand to State Court, ECF No. [3]. Plaintiff originally filed this action in the Seventeenth Judicial Circuit Court of Florida, for Broward County, Florida on December 16, 2013—alleging numerous claims of breach of contract, unjust enrichment, and *quantum meruit*. *See generally* ECF No. [1-2]. On May 16, 2014, Defendants filed a Notice of Removal, ECF No. [1]. The Court has carefully reviewed the record, the parties' briefs, and the applicable law.

### I.  Introduction

Plaintiff is a health care provider that entered into a contract ("Agreement") with Defendants in 1991. The Agreement has been subject to periodic amendments. Currently, the Agreement involves six hospital facilities: Memorial Regional Hospital, Memorial Hospital West, Memorial Hospital Pembroke, Memorial Hospital Miramar, Memorial Regional Hospital South, and Joe DiMaggio Children's Hospital. Defendant Coventry Health Care of Florida, Inc. operates a number of health benefit plans and products including HMO, Preferred Provider Organization ("PPO"), Medicare, and Medicaid throughout the state of Florida, including in Broward County, Florida. Defendant Coventry Health Plan of Florida, Inc. is licensed as an

HMO in the State of Florida, and operates a number of health benefit plans and products including HMO and PPO. Coventry Health Plan of Florida, Inc. is an affiliate company of Defendant Coventry Health and Life Insurance Company.

Plaintiff sued after Defendant allegedly engaged in systematic and ongoing breaches of the Agreement for over five years, and Plaintiff seeks over $10 million of damages. The alleged breaches of the Agreement include inappropriate denial of claims, failure to pay timely filed claims, inappropriate retraction of claim payment, and inappropriate reduction of claim payment. Plaintiff and Defendants, pursuant to the contract, attempted to resolve these disputed breaches of contract—an appeal process which included many meetings, exchanges of emails and "Pre-Litigation Spreadsheets," which contained numerous medical claims for payment of services.

Plaintiff filed its Complaint in state court on December 16, 2013, and Defendants answered in state court on January 30, 2014. Defendants filed a Notice of Removal on May 16, 2014—after Plaintiff produced a spreadsheet which disclosed the medical claims at issue in the Complaint on April 18, 2014.

**II.     Legal Standard**

Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To establish original jurisdiction, an action must satisfy the jurisdictional prerequisites of either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction exists when the civil action arises "under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Diversity jurisdiction exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See id.* § 1332(a). The removing party has the burden of showing that removal from state court to federal court is

proper. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002).

"To determine whether the claim arises under federal law, [courts] examine the 'well-pleaded' allegations of the Complaint and ignore potential defenses." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 5 (2003). An exception to this rule, however, provides that "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (internal citations, quotations and alternations omitted). "ERISA is one of those statutes." *Id.*

The procedure for removal is governed by 28 U.S.C. § 1146. Generally, a notice of removal "shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). Except in cases where removal is based on diversity of citizenship, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service of otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(2).

**III.   Analysis**

Deciding whether this case should be remanded to state court raises two issues. The first is whether Defendants timely filed the notice of removal, and the second is whether the state law claims stated in Plaintiff's Complaint are completely preempted by ERISA, thus rendering removal to federal court proper.

### A. Whether removal was timely

Plaintiff argues that Defendants' removal is untimely because Defendants filed a notice of removal more than 30 days after service of the Complaint. Plaintiff argues that at the time Defendants were served with the Complaint, Defendants were aware of the specific medical claims that form the basis of this litigation—thus, Defendants should have identified the preemption issue it presents now and should have filed within 30 days after service of the Complaint in order for removal to be timely. To show that Defendants were aware at the time when the complaint was served, Plaintiff makes three arguments. First, Plaintiff relies on the fact that Defendants were provided with "Pre-Litigation Spreadsheets" that included information "such as patient names, bill numbers, subscriber numbers, plan names, and total charges for the respective services." ECF No. [3] at 6.

Plaintiff also explains that Defendants were aware that "every medical claim for payment of services rendered by Memorial Healthcare System that are relevant to the breach of contract (and alternative counts) in the Complaint was duly appealed prior to the filing of the Complaint, thus providing Defendants notice of the relevant medical claims, as well as the relevant issues related to such medical claims." *Id*. at 7. Finally, Plaintiff argues that Defendants' removal argument is based on allegations made in the Complaint, thus showing Defendants could ascertain removability from it at the time Defendants were served with the Complaint—in other words, that the Complaint provided a "clue" as to "its flawed grounds for removal." *See generally* ECF No. [3] at 9 (citing *Crews v. Nat'l Boat Owners Ass'n (NBOA) Marine Ins. Agency, Inc.*, No. 2:05-CV-1057-MEF, 2006 WL 902269 at *9 (S.D. Ala. Apr. 6, 2006)).

Defendants respond that the "Pre-Litigation Spreadsheets" are not a factor in determining timeliness because "the weight of authority, including all Circuit Courts of Appeal to rule on the

matter, applies the bright line rule that such pre-suit communications do not trigger a removal deadline." ECF No. [8] at 15 (quoting *Mobile Ass'n for Retarded Citizens, Inc. v. Arch Ins. Grp., Inc.*, No. 13-0392-CG, 2013 WL 6147108, at *1 (S.D. Ala. Nov. 22, 2013) (citing cases)). In other words, Defendants argue that the "Pre-Litigation Spreadsheets" do not constitute "other paper" for purposes of 28 U.S.C. § 1446(b)(2).

Further, Defendants explain that it could not have known a basis for removal existed at the time the Complaint was served because of "the sheer volume and variety of pre-suit communications, meetings, and medical claims exchanged pre-suit—addressing hundreds of topics and tens of thousands of claims," *id.*, and that it did not know which medical claims were the subject of the lawsuit because the Complaint did not list any. Thus, Defendants argue that the proper time to start the 30-day clock is on April 18, 2014, the date when Plaintiff produced a spreadsheet which disclosed the medical claims at issue, and using that date, Defendants' notice of removal was timely filed. Finally, Defendants argue that Plaintiff's argument "condone[s] gamesmanship. If [Defendants] had removed this case before [Plaintiff] specified the medical claims, [Plaintiff] would undoubtedly argue that the *absence* of medical-claim information precludes the certainty required for the Court's jurisdiction." *Id.* at 16 (emphasis in original).

The Court is not persuaded that the "Pre-Litigation Spreadsheets" trigger the 30-day removal period upon service of the Complaint. Indeed, the Eleventh Circuit has not appeared to have addressed the issue of whether "other papers" under 28 U.S.C. § 1446(b)(2) can include documents provided prior to the commencement of litigation, and indeed, a number of Circuit Courts of Appeal have provided that the answer to this question is "no." *See Mobile Ass'n*, 2013 WL 6147108, at *1 (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992); *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir. 1997); *Harris v. Bankers Life and Cas. Co.*, 425

5

F.3d 689 (9th Cir. 2005); *Foster v. Mutual Fire, Marine, & Inland Ins. Co.*, 986 F.2d 48 (3d Cir. 1993)). *See also Chapman*, 969 F.2d at 160 (30-day period starts to run from the receipt of the initial pleading only when basis of removal is affirmatively revealed on the face of the initial pleading). In addition to the plain language of 28 U.S.C. § 1446(b), "policies regarding removal counsel against adopting a rule that would impute knowledge of pre-suit documents to defendants." *Village Square Condominium of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 6:09-cv-1711-Orl-31DAB, 2009 WL 4855700, at *4 (M.D. Fla. Dec. 10, 2009). "As other courts have recognized, if pre-suit documents were allowed to trigger the thirty-day limitation in 28 U.S.C. § 1446(b), defendants would be forced to 'guess' as to an action's removability, thus encouraging premature, and often unwarranted, removal requests." *Id.* (quoting *Mendez v. Cent. Garden & Pet Co.*, 307 F. Supp. 2d 1215 (M.D. Ala. 2003)).

A review of Plaintiff's Complaint shows that Defendants were not on notice of which claims were at issue in the instant lawsuit because it does not identify any of them. Even if exposure to these claims in a pre-litigation appeal process could have provided some notice upon service of the Complaint, Defendants could not have known which appealed claims were at issue. The closest Plaintiff's Complaint comes to identifying previous attempts to reconcile the claims at issue is in a paragraph titled "Conditions Precedent," in which Plaintiff alleges:

> All conditions precedent to this action have been met, waived, or excused. Specifically, since at least 2011, employees of Memorial Healthcare System have been communicating with high level executives of Defendants in an effort to resolve the disputes raised in this Complaint, including providing written notice such as spreadsheets relating to the issues in dispute.

ECF No. [1-2] at 24. This paragraph still refers to the disputes generally, and is insufficient to have put Defendants on notice that ERISA preemption could serve as a basis for removal at the time Defendants were served with the Complaint. The Court finds that Defendants obtained

notice of the potential argument for ERISA preemption at the time these claims were identified—on April 18, 2014, the date when Plaintiff produced a spreadsheet which disclosed the medical claims at issue. Accordingly, the 30-day removal period began at that time, *see Holloway v. Morrow*, Civil Action 07-0839-WS-M, 2008 WL 401305 at *3 (S.D. Ala. 2008) (citing cases for the proposition that discovery documents can constitute "other papers"). As such, Defendants timely filed the notice of removal on May 16, 2014.

### B. Whether ERISA preemption applies

"[I]f an individual, at some point could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). ERISA § 502(a)(1)(B) provides:

> A civil action may be brought—(1) by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce the rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). *See also Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009) (applying *Davila* as two-part test: "(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim").

### 1. Whether Plaintiff could have brought its claim under § 502(a)

"This part of the test is satisfied if two requirements are met: (1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut State Dental*, 591 F.3d at 1351 (citations omitted).

### i. Whether Plaintiff's claim falls within the scope of ERISA

To address whether the claim falls within the scope of ERISA, the Eleventh Circuit has adopted a distinction between two types of claims: "those challenging the 'rate of payment' pursuant to the provider-insurer agreement, and those challenging the 'right to payment' under the terms of an ERISA beneficiary's plan." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (citing *Connecticut State Dental*, 591 F.3d 1349-50). "[A] 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to the 'right of payment' under an ERISA plan does." *Id. See also Connecticut State Dental*, 591 F.3d at 1351 ("What we have, then, is really a hybrid claim, part of which is within § 502(a) and part of which is beyond the scope of ERISA. Because [Plaintiffs] complaint, at least in part, is about denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA.").

Defendants argue that Plaintiff's lawsuit amounts to a "right of payment" dispute—a hybrid one at best—pointing out that for a number of the medical claims at issue, the dispute between Plaintiff and Defendants involves, what MHS even categorized as, "Denials." ECF No. [8] at 10. Defendants illustrate this argument by providing two examples of these claims. The first, a claim for patient "A.A.," was listed as having been "Denied Per Medical Director, Medical Criteria Not Met . . . benefit exclusion due to illegal drug use and crystal meth," citing the subject plan's Certificate of Coverage. *Id.* at 12 (citing ECF No. [8-2] at 31-32, 36-37, 92). The second, a claim for patient "J.A.," was listed as having been "Denied Per Medical Director, Medical Criteria Not Met . . . occupational therapy is not covered under the [Plan]." *Id.* at 14 (citing ECF Nos. [8-1] at 55-56; [8-2] at 4, 10).

Plaintiff argues that it is suing Defendants for breach of its agreement, and in so doing, does not assert any allegations of any ERISA violations, and interpretation of the ERISA-regulated employee health benefit plan is not necessary to decide the case. ECF No. [3] at 16-17. Plaintiff explains that it is not seeking to "recover benefits due to a beneficiary under the terms of his plan . . . [but] is suing, by way of example, for breach of contract, because Defendants are attempting to retroactively deny payment of claims for services already rendered in violation of the express provisions of the Agreement." *Id.* at 13.

A review of Plaintiff's Complaint, however, shows that Plaintiff's characterization of its case against Defendants, as explained above, is incomplete. An entire section of Plaintiff's Complaint is dedicated to the "Inappropriate Denial of Claims," in which Plaintiff alleges violation of its agreement with Defendants because of retroactive denials. *See* ECF No. [1-2] at 13-14. Plaintiff's Complaint cites Sections 3.1 and 4.1 of the Agreement as a provision that "clearly illustrates the intention to establish the pre-requisites that a denial be prospective." *Id.*

Section 3.4, in pertinent part, provides that:

> Claims shall not be denied when clinical information was available to Coventry, but not obtained . . . **Hospital does not accept retrospective denials.** If Coventry determines that a Member's continued hospitalization is no longer medically necessary, Coventry will provide written notice to the Member and to the Hospital prior to discharge.

*Id.* at 13 (emphasis in original). Section 4.1 provides:

> It is expressly understood and agreed by and between the parties to this Agreement that Participating Physicians licensed as independent professionals, and not HIP Network,[1] have the ultimate responsibility for the care rendered to their patients. HIP Network shall pay for authorized *covered services* rendered to Members in good standing, who are eligible for such services at the time they are

---

[1] As Plaintiff's Complaint explains, "[t]he original Agreement was between Memorial Hospital and HIP Network of Florida, Inc. In 2000, Florida Healthplan Holdings, LLC, purchased HIP Health Plan and in 2001 HIP Health Plan was renamed Vista Healthplan, Inc. In 2007, Coventry Health Care, Inc. purchased Vista's parent company. Vista is a wholly-owned subsidiary of Coventry Health Care, Inc., and in 2010 Vista changed its name to Coventry Health Care of Florida, Inc. to reflect the affiliation with its parent entity." ECF No. [1-2] at 6 n.1.

> performed and under the terms of their Subscriber Contracts and which are rendered to Members as ordered by authorized physicians. . .

*Id.* at 13-14 (emphasis added). Plaintiff's Complaint also explains that the agreement requires compliance with Florida law, and quotes:

> (1) A health maintenance organization must pay any hospital-service or referral-service claim for treatment for an eligible subscriber which was authorized by a provider empowered by contract with the health maintenance organization to authorize or direct the patient's utilization of health care services and which was also authorized in accordance with the health maintenance organization's current and communicated procedures, unless the provider provided information to the health maintenance organization with the willful intention to misinform the health maintenance organization.
>
> (2) A claim for treatment may not be denied if a provider follows the health maintenance organization's authorization procedures and receives authorization for a *covered service* for an eligible subscriber, unless the provider provided information to the health maintenance organization with the willful intention to misinform the health maintenance organization.

*Id.* at 14 (quoting Fla. Stat. § 641.3156) (emphasis added).

Plaintiff's Complaint must be considered with the plain meaning of the quoted language of the Agreement and Florida law. Determining the parties' obligations as to retroactive denials of claims requires determining whether the claims in question involved a covered service. As applied to the two claims at issue in Defendants' examples, interpretation of what services are covered constitutes a "right of payment" dispute. Although, in the case of "A.A."'s claim, other reasons for the denial of payment were listed in addition to "Denied Per Medical Director, Medical Criteria Not Met," *see, e.g.*, ECF No. [8-2] at 32 ("charge exceeds the contractual allowance per the contract"), this fact renders this dispute as a hybrid one at best, meaning that "because [Plaintiffs] complaint, at least in part, involves denials of benefits and other ERISA violations, their breach of contract claim implicates ERISA." *Connecticut State Dental*, 591 F.3d at 1351.

### ii. Whether Plaintiff has standing to sue under ERISA

ERISA § 502(a)(1)(B) states that a claim may be brought by a "participant or beneficiary." Plaintiff in the present case, however, is a healthcare provider. Typically, "[h]ealthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA." *Connecticut State Dental*, 591 F.3d at 1347 (citing *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001)). However, "it is well-established in this and most other circuits that a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." *Id*. Therefore, a claim for benefits by a healthcare provider pursuant to a written assignment may fall within the scope of § 502(a). *Id*.

Defendants have shown that Plaintiff has accepted a valid assignment. *See* ECF No. [8] at 22-23. Plaintiff does not dispute the existence of the assignment; rather, Plaintiff contends that Defendants do not have standing because they have not shown that Plaintiff is asserting a claim under the assignment. In other words, Defendants do not have standing because Plaintiffs are not "stepping into the shoes of the participant or beneficiary in order to 'sue for benefits.'" ECF No. [14] at 13. Plaintiff relies on *Blue Cross of California v. Anesthesia Care Assoc. Med. Grp., Inc.*, 187 F.3d 1045 (9th Cir. 1999), in arguing that there is "no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits of an ERISA plan." *Id.* at 1052.

Plaintiff explains that "where the meaning of the term in the ERISA-regulated employee health benefit Plan [sic] is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." ECF No. [14] at 14 (quoting *Blue Cross of Ca.*, 187 F.3d at

11

1051) (internal alterations omitted). The court in *Blue Cross of California* made clear, however, that—unlike in this case—"[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount* or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051 (emphasis in original). Because determining any liability for breach of contract would require determining whether the claims in question involved a covered service, as explained above, this case implicates the right to payment—and that, in tandem with the valid assignment, provides standing in this case under ERISA.

### 2. Whether no other legal duty supports Plaintiff's claim

The second *Davila* inquiry is whether Plaintiff's claims are founded upon a legal duty that is independent of ERISA. Here, too, the Court's "analysis above answers this question." *Connecticut State Dental Ass'n*, 591 F.3d at 1353. An assignee with state law claims independent of ERISA claims can assert a claim for benefits under state law, ERISA, or both. *See id.* at 1347. "[A]ny determination of benefits under the terms of a plan, i.e., what is medically necessary or a Covered Service—does fall within ERISA . . . and the resolution of a right to payment dispute requires an interpretation of the plan [and] . . . falls under ERISA and is a legal duty dependent on, not independent of, the ERISA plan." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, __ F. Supp. 2d. __, __, 2013 WL 9576688 (S.D. Fla. 2013) (citing *Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 530-531 (5th Cir. 2009) (internal quotation marks omitted); *Montefiore Med. Ctr. V. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011)).

As explained above, at least part of the resolution of the right to payment hinges on interpretation of the ERISA plan—i.e., whether the retroactive denials complained of were for

covered services. *See* ECF No. [1-2] at 13-14. *Cf. Gables Ins. Recovery*, __ F. Supp. 2d. at __, 2013 WL 9576688, at *8-*9 (complaint stating six claims—including breach of contract, breach of oral agreement, breach of implied contract, and *quantum meruit*—were not founded upon duty independent of ERISA because claim required determination of whether the services were covered and if payment was merited).

### IV.  Conclusion

Being fully advised, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Remand to State Court, **ECF No. [3]**, is **DENIED**.

2. The Parties shall continue to abide by the Court's Scheduling Order. *See* ECF No. [27].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 13th day of November, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record